## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

_____

**INFOCISION MANAGEMENT CORPRATION,**

               **Plaintiff,**

      **v.**

**JENA GRISWOLD, in her official capacity as Colorado Secretary of State**

               **Defendant.**
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

## <u>NATURE OF THE CASE</u>

1.      This is a civil action wherein Plaintiff prays for declaratory judgment as well as preliminary and permanent injunctions to restrain Defendant from acting under color of state law to deprive Plaintiff of rights secured to it by the free speech provisions of the First Amendment to the United States Constitution and Article II, § 10 of the Colorado Constitution.

2.      Defendant has exercised her unbridled discretion to discriminate against Plaintiff based on unconstitutional statutory provisions that create a prior restraint on Plaintiff's right to free speech in Colorado.

3.      Defendant denied Plaintiff's license to engage in fully protected charitable solicitations in the State of Colorado and banned it from registering for a period of years under C.R.S. § 6-16-104.6(10) solely on the ground that it entered into a settlement agreement with a federal agency that contained "injunctive language" and which contained no admission or finding of wrongdoing. The Secretary acknowledges that she has received no complaints about InfoCision's speech in Colorado in the nearly 18 years that it has been registered in this jurisdiction.

1

4.     Defendant acknowledges allowing others with actual injunctions issued by a court to continue soliciting unfettered in Colorado under the same statute, thereby favoring some speakers over others.

5.     Defendant is operating its licensing scheme as an unconstitutional prior restraint and, in so doing, has deprived Plaintiff of its constitutional right to free speech in Colorado under the United States Constitution, Article II, § 10 of the Colorado Constitution, and the Colorado Administrative Procedure Act ("APA"), C.R.S. § 24-4-106. The United States Supreme Court made clear in *Near v. Minnesota*, 283 U.S. 697, 721 (1931) that a statute may punish past unlawful speech but it may not, as a protective measure, prohibit prospective fully protected speech. Such is the "essence of censorship." *Id.* at 713.

## JURISDICTION

6.     Plaintiff brings its First Amendment claim under 42 U.S.C. § 1983 to redress deprivations by Defendant, acting under color of state law, of certain rights secured to Plaintiff and others by the First and Fourteenth Amendments to the United States Constitution. Jurisdiction is therefore conferred upon this Court pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(3) and (4); and 42 U.S.C. § 1983.

7.     Plaintiff also challenges Defendant's final agency decision denying Plaintiff's registration to solicit charitable contributions in Colorado under Article II, § 10 of the Colorado Constitution and the Colorado APA, C.R.S. § 24-4-106. This court retains supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367(a) because they arise out of the same case or controversy.

## VENUE

8.     Venue properly lies with this Court pursuant to Title 28 U.S.C. § 1391(b) since

a substantial part of the events giving rise to this claim occurred in the District of Colorado.

## DECLARATORY RELIEF

9.      Authority for declaratory relief sought by Plaintiff is conferred upon this Court by 28 U.S.C. §§ 2201 and 2202, and by Fed. R. Civ. P. 57.

10.      Plaintiff is entitled to recovery of attorney's fees and costs in this matter pursuant to 42 U.S.C. § 1988.

## PARTIES

11.      Plaintiff, InfoCision Management Corporation ("InfoCision"), is a for-profit corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Akron, Ohio. InfoCision provides professional telephone fundraising programs for non-profits, political organizations, and religious missions nationwide, and until August 9, 2019, conducted professional telephone solicitations on behalf of such charity, political and non-profit advocacy organizations within the State of Colorado without issue.

12.      Defendant, Jena Griswold, is the Secretary of State of Colorado (hereinafter "Secretary of State" or "Secretary") and is charged by law with the enforcement and administration of the Colorado Charitable Solicitations Act, C.R.S. §§ 6-16-101, *et seq.*, and has an interest in this proceeding and any issues herein. The Secretary of State denied InfoCision's renewal registration to solicit charitable contributions in the State of Colorado on August 9, 2019. Following an administrative hearing, the Secretary issued her final decision affirming the denial on January 7, 2020. The Secretary of State is named in her official capacity, only.

## FACTUAL ALLEGATIONS

13.      InfoCision assists charitable organizations, political organizations, and religious missions in spreading their message, identifying like-minded citizens and raising funds through grassroots telephone fundraising programs nationwide. InfoCision is a professional solicitor

under the Colorado Charitable Solicitations Act, C.R.S. §§ 6-16-101, *et seq.*

14.     InfoCision makes charitable appeals on behalf of non-profit organizations of all social and political persuasions.

15.     Until August 9, 2019, InfoCision conducted professional telephone solicitations on behalf of such charitable, political, and non-profit advocacy organizations within the State of Colorado without issue.

16.     On January 11, 2018, InfoCision entered into a settlement agreement with the Federal Trade Commission ("FTC") that resolved disputed claims. *See* Stipulated Order for Permanent Injunction and Civil Penalty Judgment, *United States of America v. InfoCision,* Case No. 5:18-cv-00064-SL (N.D. Ohio), at pp. 4-5, Section I. Prohibition (hereinafter "settlement agreement") (attached hereto as "Exhibit A").

17.     Specifically, the issue in the FTC matter involved a difference in interpretation of the language in the regulation as applied to InfoCision's volunteer recruitment campaign conducted on behalf of its non-profit clients. InfoCision continues to believe that its campaign fully complied with the Telemarketing Sales Rule's ("TSR") disclosure requirements. The TSR requires that InfoCision disclose "promptly" the purpose of each call. The purpose of all calls in the volunteer recruitment campaign is to recruit volunteers to send donation request packages to their friends, families, and/or neighbors. The FTC interpreted a "donation" of time to be the same as a "donation" of money and argued that the word "donation" could cause consumer confusion, regardless of the fact that there had not been consumer complaints over the more-than-fifteen years of the program. In addition, InfoCision submitted the language in question to over a dozen states annually for each non-profit client, per the state solicitation notice requirements, without objection.

18.     At the end of the day, the purpose of the calls was to recruit volunteers and that was promptly disclosed at the onset of the call. While a disagreement also arose over the interpretation of the word "purpose" and whether it included planned or unplanned alternative asks that may or may not be made at the end of a call to prior donors/volunteers only, InfoCision determined to resolve the dispute and agreed not to violate the TSR.

19.     That settlement agreement contains no finding of wrongdoing and no admission of wrongdoing.

20.     While that settlement agreement does contain a prohibition from violating federal law in the future, it does not enjoin InfoCision from any prior wrongdoing as there was no such finding or admission. Rather, the prohibition contains future prohibitive language and is a boilerplate element of a settlement agreement with the FTC.

21.     Further, the "injunctive language" contained in the settlement agreement is styled as a "permanent injunction"; however, a "permanent injunction" in the context of an equitable remedy is a form of relief granted only "after a final hearing on the merits," see BLACK'S LAW DICTIONARY 800 (8th ed. 2007), which never occurred in the FTC matter.

22.     Moreover, the alleged "injunction" does not prohibit InfoCision from engaging in charitable solicitations in any jurisdiction at any time, nor could it. *See CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (citing *Near*, 283 U.S. at 716); *Alexander v. United States*, 509 U.S. 544, 550 (1993). Yet, Colorado has done so here.

23.     On July 30, 2018, InfoCision filed an application for renewal of its registration to solicit charitable contributions in the State of Colorado. In compliance with Colorado law, InfoCision disclosed all prior settlement agreements, including its agreement with the FTC.

24.     The Secretary admits that it has received no complaints about InfoCision's

speech in Colorado in the nearly 18 years that it has been registered in this jurisdiction. *See* Transcript of Administrative Hearing (October 3, 2019), at 37, 55-56 (attached hereto as "Exhibit B").

25.     Notwithstanding, on August 10, 2018, the Secretary of State denied InfoCision's application for renewal on grounds that InfoCision's settlement agreement with the FTC allegedly enjoined InfoCision from "engaging in deceptive conduct relating to charitable solicitations" and, therefore, the existence of that injunction violates C.R.S. § 6-16-104.6(10). *See* Secretary Letter of August 10, 2018 (attached hereto as "Exhibit C").

26.     By letter of August 17, 2018, InfoCision explained to the Secretary of State that its denial of InfoCision's registration to engage in protected speech in Colorado neither complies with its own procedural laws nor the First Amendment to the United States Constitution.

27.     Specifically, the Secretary of State failed to issue its denial within the statutorily permitted  ten (10) days. *See* C.R.S. 6-16-104.6(6). Further, as InfoCision explained, the Secretary's denial constituted an abuse of unbridled discretion and a prior restraint on protected charitable speech under a long line of First Amendment precedent. *See* InfoCision Letter of August 17, 2018 (attached hereto as "Exhibit D").

28.     On August 24, 2018, the Secretary of State retracted her denial. The Secretary stated that, "upon further review," the Secretary has approved InfoCision's registration of August 9, 2018. *See* Secretary Letter of August 24, 2018 (attached hereto as "Exhibit E").

29.     InfoCision continued to speak freely in the State of Colorado until August 2019. On August 1, 2019, InfoCision again submitted its application to renew its paid solicitor registration with the Colorado Secretary of State's Office. InfoCision's application again disclosed all prior settlement agreements, including the FTC settlement agreement.

30.     On August 9, 2019, the Secretary of State denied InfoCision's application for renewal of its registration to solicit charitable contributions in the State of Colorado.

31.     This time, the Secretary of State issued her denial within ten (10) days. In her Notice of Denial, the Secretary alleges that InfoCision violated C.R.S. § 6-16-104.6(10). *See* Secretary of State's Notice of Denial, at ¶ 2 (Aug. 9, 2019) (attached hereto as "Exhibit F").

32.     InfoCision appealed. The Secretary issued her Notice of Hearing on August 20, 2019, and the Secretary held an administrative hearing of the matter of her denial of InfoCision's license to speak freely in Colorado on October 3, 2019.

33.     At and prior to the hearing, the Secretary refused to hear InfoCision's claims that her denial of its license to solicit charitable contributions in Colorado infringes InfoCision's right to free speech and constitutes a violation of the First Amendment to the United States Constitution and Section 10 of Article II of the Colorado Constitution. *See* Secretary of State's Initial Decision, at 2-3 (Oct. 15, 2019) (attached hereto as "Exhibit G").

34.     Following the administrative hearing, the Hearing Officer issued his initial decision on October 15, 2019, which affirmed the Secretary's denial. *See* Exhibit G.

35.     InfoCision appealed and filed its Exceptions as outlined in the Colorado APA on November 14, 2019.

36.     On January 7, 2020, the Secretary issued her final decision affirming her denial of InfoCision's license to solicit charitable contributions in Colorado pursuant to C.R.S. § 6-16-104.6(10). *See* Secretary of State's Final Decision, at 12 (Jan. 7, 2020) (attached hereto as "Exhibit H").

37.     C.R.S. § 6-16-104.6(10) states that no "person may act as a paid solicitor . . . if such person . . . *has been enjoined* within the immediately preceding five years under the laws of

this or any other state or of the United States *from engaging in deceptive conduct relating to charitable solicitations*." (Emphasis added).

38.     Of critical importance, InfoCision's settlement agreement with the FTC does not enjoin InfoCision "from engaging in [any past] deceptive conduct relating to charitable solicitations." It only prohibits certain future violations of law, which Colorado law already prohibits.

39.     Also of critical importance, InfoCision's settlement agreement with the FTC does not enjoin InfoCision from engaging in fully protected charitable speech in any jurisdiction. Unlike C.R.S. § 6-16-104.6, the FTC settlement contains no ban on protected speech whatsoever.

40.     However, the Secretary's 2019 denial prohibits InfoCision from engaging in prospective fully protected speech in Colorado. It silences InfoCision in the state; and it results in serious economic harm from lost revenue. It threatens to drive InfoCision out of business altogether.

41.     The likelihood that other states will follow suit and unconstitutionally silence InfoCision's future protected speech further chills InfoCision's First Amendment freedoms.

42.     C.R.S. § 6-16-111(6)(a) states that the Secretary of State:

> *may deny, suspend, or revoke* the registration of any charitable organization, professional fund-raising consultant, or paid solicitor that makes a false statement or omits material information in any registration statement, annual report, or other information required to be filed by this article or *that acts or fails to act in such a manner as otherwise to violate any provision of this articl*e.

(Emphasis added).

43.     C.R.S. § 6-16-111(6)(a) further states that the "secretary of state *may* . . . deny, suspend, or revoke the registration of any person who does not meet the requirements for registration set forth in this article." (Emphasis added).

44.    The Secretary of State knew of the January 2018 settlement agreement with the FTC in 2018 when it first denied InfoCision's registration. The Secretary retracted its first denial for failure to comply with its own procedural laws. The Secretary then failed to act on the information until InfoCision sought again to renew its registration more than one year following its first disclosure of the settlement agreement.

45.    Section 6-16-111(6)(a) states that the Secretary "*may*" suspend or revoke a charitable solicitation license on grounds that the licensee fails to meet the requirements set forth in the Colorado Charitable Solicitations Act.

46.    The Secretary's failure to act on the disclosure of the FTC settlement agreement, of which it had admittedly known for more than a year, and which it apparently finds so damning as to now warrant silencing InfoCision's future protected speech in Colorado, coupled with its decision not to suspend, revoke, or otherwise act with respect to the license in 2018 or early 2019, constitutes an abuse of discretion that harmed InfoCision, who relied on the state's prior approval of its registration with full disclosure of the FTC settlement agreement.

47.    Furthermore, the Secretary has approved the registration of other paid solicitors who made similar disclosures, including approving the license of one registrant that was actually enjoined from engaging in any charitable solicitations in another state. *See* Exhibit B at 50-51 ("It's correct that they made a similar disclosure in 2018 and we approved that application. I think in hindsight we may have made a different decision."). Accordingly, the Secretary has treated others similarly situated differently under C.R.S. § 6-16-104.6(10), favoring some speakers over others.

48.    Even more chilling, the Secretary of State's denial goes beyond that which the original settlement agreement with the FTC did (which contained no injunction from prior

conduct or future speech) as it silences InfoCision's prospective charitable speech in this jurisdiction. *Riley v. National Federation of the Blind*, 487 U.S. 781, 796-97 (1988) (there is no constitutionally significant difference between compelled speech and compelled silence). It further threatens to drive InfoCision out of business and chills its First Amendment rights and those of its non-profit clients and others similarly situated in violation of the First Amendment to the United States Constitution, Article II, § 10 of the Colorado Constitution, and the Colorado APA.

49.     The Secretary of State makes no allegation of wrongdoing or violation of Colorado law other than that InfoCision entered into a settlement agreement with the FTC that contained injunctive language prohibiting future violations of the law. Colorado law already prohibits such future violations of law. In other words, the affirmative obligation that InfoCision obey the law is incumbent upon InfoCision with or without the settlement agreement and with or without any "injunctive" language.

50.     Prior restraints on fully protected speech cannot pass constitutional muster unless "the *evil* that would result from the [speech] is both *great* and *certain* and cannot be mitigated by less intrusive measures." *CBS*, 510 U.S. at 1317 (emphasis added); *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 556-59 (1976). The United States Supreme Court has long held that a statute may punish past unlawful speech but it may not, as a protective measure, prohibit prospective fully protected speech. *Near*, 283 U.S. at 713 (such is the "essence of censorship.").

51.     Accordingly, on its face and as applied, Section 6-16-111(6) of the Colorado Charitable Solicitations Act grants unbridled discretion to the Secretary of State to discriminate against speakers ad hoc and to silence protected speech it dislikes in violation of the First and Fourteenth Amendments to the United States Constitution and Article II, § 10 of the Colorado

Constitution. Plaintiff's action constitutes an abuse of such discretion.

52.     Section 6-16-104.6(10) of the Colorado Charitable Solicitations Act, on its face and as applied to InfoCision, creates an unconstitutional prior restraint abridging InfoCision's right to free speech because it prohibits fully protected charitable speech before it is to occur. Through her denial, the Secretary of State has banned the speech of InfoCision and its charitable organization clients as such speech would be made by and through their paid speaker on their behalf.

53.     Prior restraints on protected speech are presumed unconstitutional. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *Near*, 283 U.S. at 713; *Mahaney v. City of Englewood*, 226 P.3d 1214, 1219 (Colo. Ct. App. 2009); *Franken Equities v. City of Evanston*, 967 F. Supp. 1233, 1236 (D. Wyo. 1997) ("a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.") (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975)); *Local Org. Comm., Denver Chapter, Million Man March v. Cook*, 922 F. Supp. 1494, 1497-98 (D. Colo. 1996).

54.     Charitable solicitations constitute protected speech. The United States Supreme Court has long afforded the strictest First Amendment protection to charitable solicitations because "charitable appeals for funds . . . involve a variety of speech interests – communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes – that are within the protection of the First Amendment." *Vill. of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980).

55.     In distinguishing commercial speech from fully protected charitable speech, the Supreme Court recognized that charitable speech is not mere commercial speech because it "does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics of goods and services." *Id.* Any restriction imposed on charitable solicitations, including mandatory disclosures and injunctive relief, therefore, must "be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues." *Id.*

56.     It is an inescapable fact that charitable organizations often need to utilize the assistance of professionals because they lack the resources to perform certain functions on their own. The United States Supreme Court has long held that professionals who are compensated to speak on behalf of charitable organizations are entitled to the same First Amendment protection as if the charitable organization was speaking for itself. *Riley*, 487 U.S. at 801 ("[g]iven our previous discussion and precedent, it will not do simply to ignore the First Amendment interest of professional fundraisers in speaking.").

57.     Sections 6-16-104.6(10) and 6-16-111(6) of the Colorado Charitable Solicitations Act harm InfoCision and others similarly situated by granting unbridled discretion to the Secretary of State and imposing a prior restraint on their fully protected speech in violation of the First and Fourteenth Amendments to the United States Constitution and Article II, § 10 of the Colorado Constitution. The relief sought in this complaint would fully redress that harm.

58.     Pursuant to Section 6-6-111(6)(b), the Secretary has agreed to stay enforcement of her denial of InfoCision's registration to solicit charitable contributions during the pendency of any request for judicial review made under C.R.S. § 24-4-106.

## COUNT I

**U.S. CONST. Amend. I, 42 U.S.C. § 1983**

**VIOLATION OF THE FIRST AMENDMENT
PRIOR RESTRAINT**

59.     InfoCision incorporates herein by reference each and every allegation contained in each of the above paragraphs.

60.     The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I.

61.     A prior restraint on speech comes before a court with "a heavy presumption against its constitutional validity." *Bantam Books, Inc.*, 372 U.S. at 70; *Near*, 283 U.S. at 714; *see also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-61 (U.S. 1958) (quoting *Thomas v. Collins*, 323 U.S. 516 (1945)).

62.     Section 6-16-104.6(10) of the Colorado Charitable Solicitations Act is unconstitutional on its face and as applied to Plaintiff because it bans protected speech in Colorado before it is to occur. Specifically, if a speaker has been "enjoined within the immediately preceding five years under the laws of this or any other state or of the United States from engaging in deceptive conduct relating to charitable solicitations" then C.R.S. § 6-16-104.6(10) requires that said speaker be denied the right to engage in fully protected charitable solicitation in the State of Colorado.

63.     Although InfoCision was not "enjoined . . . from engaging in deceptive conduct relating to charitable solicitations," as there was no finding or admission of any wrongdoing in the FTC settlement agreement, the Secretary of State denied InfoCision's registration to make charitable appeals in Colorado pursuant to C.R.S. § 6-16-104.6(10).

64.     The Secretary's denial operates as an unconstitutional prior restraint on the

freedom of speech because it actually forbids protected speech before the communications are to occur. *See CBS*, 510 U.S. at 1317; *Alexander*, 509 U.S. at 550; *Near*, 283 U.S. at 716.

65.     The appeal for support on behalf of charitable organizations is a form of fully protected speech under the First Amendment, which extends to the states under the Fourteenth Amendment to the United States Constitution. *Riley*, 487 U.S. at 789.

66.     The Secretary of State has banned InfoCision from making charitable solicitations on behalf of its non-profit, political, and religious advocacy organization clients and from otherwise acting as a professional solicitor within the State of Colorado for a period of years.

67.     As such, the Secretary of State purports to restrain the voices of potentially competing political and advocacy interests by silencing their professional fundraiser and forcing their non-profit, political, and advocacy organization clients either out of Colorado with their chosen solicitor or to find a new professional solicitor.

68.     Such state action appears to constitute discrimination against disfavored professional solicitors and their disfavored charitable and political organization clients that advocate interests adverse to the Secretary of State and Attorney General.

69.     Even absent any discriminatory actions or intentions whatsoever on the part of the Secretary of State, silencing the future, protected speech of professional solicitors and banning them from engaging in protected charitable speech in Colorado constitutes an unconstitutional prior restraint on their freedom of speech.

The Supreme Court has long preferred punishing prior unlawful speech to muzzling fully protected speech before it is to occur. *Near*, 283 U.S. at 716.

## COUNT II

### U.S. Const. Amend. I, 42 U.S.C. § 1983

### VIOLATION OF THE FIRST AMENDMENT
### UNBRIDLED DISCRETION

70.     InfoCision incorporates herein by reference each and every allegation contained in each of the above paragraphs.

71.     Prior restraints in the form of licensing schemes abridge the guarantee of freedom of speech when such schemes permit government officials unfettered discretion to grant or deny permission. *Freedman v. Maryland*, 380 U.S. 51, 59 (1965); *Franken Equities*, 967 F. Supp. at 1236 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223-27 (1990)).

72.     Unfettered discretion exists when a licensing system fails to impose adequate safeguards for officials to apply in rendering a decision to grant or deny the required permission or when a regulation fails to impose procedural safeguards that ensure a sufficiently prompt decision. *Freedman*, 380 U.S. at 58-9; *Franken Equities*, 967 F. Supp. at 1236.

73.     Section 6-16-111(6) grants the Secretary of State unbridled discretion such that she "*may*" deny, suspend, or revoke a registration but need not do so as she chooses. The failure to impose adequate safeguards to prevent discrimination against and disparate treatment of registrants by the Secretary of State renders the Act unconstitutional on its face and, here, as applied to InfoCision.

74.     The Secretary admits that she has approved the registration of others who the Secretary knew were actually enjoined from soliciting charitable contributions in another jurisdiction by a court of law within the preceding five (5) years. *See* Exhibit B at 50-51. Accordingly, the Secretary admits to exercising her unbridled discretion to treat registrants disparately under section 6-16-104.6(10) of the Colorado Charitable Solicitations Act.

75. Section 6-16-111(6) permits the Secretary of State to delay denial, suspension, or revocation of a license granted under the Charitable Solicitations Act, and the Secretary's delayed denial pursuant thereto has directly and proximately harmed InfoCision and its non-profit clients.

76. Where a registrant has relied upon its registration approval to contract for speaking on behalf of others in the state, such as here where InfoCision's registration was approved in 2018 despite disclosure of the settlement agreement, such delayed denial is unreasonable, prejudicial, and, in this case, harmful. Such unreasonable delay has resulted in a gag on the speech of InfoCision and its non-profit clients—but only after InfoCision relied on its prior approval to solicit on behalf of and contract with clients for future solicitations in the state. The delay has also resulted in economic damages in lost revenue and potential contractual claims. Indeed, said denial threatens to drive InfoCision out of business.

77. A government may regulate speech only if it does so reasonably, constitutionally, and without overly burdening same. *Riley*, 487 U.S. at 787; *Schaumburg*, 444 U.S. at 637; *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 967 (1984); *Sable Commc'ns of Cal. v. FFC*, 492 U.S. 115, 126 (1989). As such, licensing schemes must contain sufficient procedural safeguards to ensure that no unconstitutional prior restraint chills free speech. *Freedman,* 380 U.S. at 59 (giving government officials unbridled discretion to issue, deny, suspend or revoke a license  to speak presents an unconstitutional risk of both indefinitely suppressing and chilling protected expression).

78. And the United States Supreme Court has made clear that "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3)

the censor must bear the burden of going to court to suppress the speech and must bear the burden

of proof once in court. *FW/PBS*, 493 at 227 (citing *Freedman*, 380 U.S. at 58-60).

## COUNT III

### Colo. Const. art. II, § 10

### VIOLTION OF COLORADO CONSTITUTION
### FREEDOM OF SPEECH

79.     InfoCision incorporates herein by reference each and every allegation contained

in each of the above paragraphs.

80.     Section 10 of Article II of the Colorado Constitution states that "No law shall be

passed impairing the freedom of speech." Colo. Const. art. II, § 10.

81.     Consistent with the United States Constitution, Colorado's Supreme Court has

long recognized that "Article II, Section 10 provides greater protection of free speech than does

the First Amendment." *Bock v. Westminster Mall Co.*, 819 P.2d 55, 59 (Colo. 1991) ("The First

Amendment is a floor, guaranteeing a high minimum of free speech, while our own Article II,

Section 10 is the 'applicable law' under which the freedom of speech in Colorado is further

guaranteed.") (citing *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81 (1980)).

82.     Section 6-16-104.6(10) of the Charitable Solicitations Act bans professional

speakers from engaging in fully protected speech in the State of Colorado.

83.     The Secretary has denied InfoCision's license to speak freely in Colorado and,

pursuant to C.R.S. § 6-16-104.6(10), applied the statutory ban on free speech to InfoCision even

though the Secretary has acknowledged that it has received no consumer complaints regarding

InfoCision's prior speech in Colorado and that InfoCision is otherwise compliant with Colorado

charitable solicitation laws.

84.     While the FTC did not seek to ban InfoCision's charitable solicitation, the

Colorado Secretary of State has. And she has done so without any alleged wrongdoing in or relating to Colorado.

85.     Worse, she has done so after allowing others who were actually enjoined by a court from charitable solicitation in other jurisdictions within the previous five years to continue speaking unfettered in Colorado. *See* Exhibit B at 50-51.

86.     The Secretary's denial of InfoCision's right to engage in protected charitable speech in Colorado violates Section 10 of Article II of the state's Constitution.

## COUNT IV

### VIOLATION OF THE COLORADO APA
### CONTRARY TO CONSTITUTIONAL RIGHT & ABUSE OF DISCRETION

87.     InfoCision incorporates herein by reference each and every allegation contained in each of the above paragraphs.

88.     The Colorado APA provides that "[t]he court shall hold unlawful and set aside" any "agency action" that is "[c]ontrary to constitutional right" or "[a]n abuse or clearly unwarranted exercise of discretion." C.R.S. § 24-4-106(7)(b)(III), (IV).

89.     The Secretary's final decision of January 7, 2020, denying InfoCision's license to engage in fully protected speech in Colorado constitutes final agency action under the APA.

90.     For the reasons stated in the foregoing Counts I, II and III of this Complaint, section 6-16-104.6(10) of the Colorado Charitable Solicitations Act is unconstitutional on its face and as applied in violation of the First Amendment as well as the Colorado Constitution's even broader right to speech.

91.     For the reasons stated in the foregoing Count II, the Secretary's denial of InfoCision's registration to solicit charitable contributions under sections 6-16-104.6(10) and 6-16-111(6) constitutes an abuse of unbridled discretion by the Secretary of State that has directly

and proximately harmed InfoCision.

92.     The Secretary's 2019 denial prohibits InfoCision from engaging in protected charitable speech in Colorado for a period of years in violation of its constitutional rights.

93.     It silences InfoCision in the state—but only after InfoCision relied on the Secretary's prior 2018 approval, after full disclosure of the FTC settlement agreement, to solicit on behalf of and contract with clients for future solicitations in the state.

94.     The Secretary's denial of InfoCision's right to solicit in Colorado has resulted in economic damages in lost revenue and potential contractual claims. Indeed, said denial threatens to drive InfoCision out of business.

95.     The likelihood that other states will follow suit and unconstitutionally silence InfoCision's future protected speech further chills InfoCision's First Amendment freedoms.

96.     A statute that "'. . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official – as by requiring a permit or license which may be granted or withheld in the discretion of such official – is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.'" *FW/PBS,* 493 at 226 (citations omitted).

97.     Further, a "licensing scheme creates the possibility that constitutionally protected speech will be suppressed where there are inadequate procedural safeguards to ensure prompt issuance of the license." *Id.; Riley,* 487 U.S. at 781; *Freedman*, 380 U.S. at 57.

98.     Following *Freedman*, Colorado courts also require that "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available. *Mahaney*, 226 P.3d at 1219 (citing *FW/PBS*, 493 at 227; *Freedman*, 380 U.S. at 58-60)); *City of Littleton v. Z.*

*J. Gifts D-4, L.L.C.*, 541 U.S. 774, 780 (2004); *City of Colorado Springs v. 2354 Inc.*, 896 P.2d

272, 288 (Colo. 1995) ("A licensing provision prohibiting the ability of an applicant to engage in

[] activities protected by the First Amendment on the basis of prior misconduct can be sustained

only on the basis of evidence *that serious criminal conduct* would result from granting that

license").

99.     "A statutory or constitutional right to a non-arbitrary exercise of discretion in

considering [its] application[] is all that is needed for a legally protected interest" in challenging

final agency action under the Colorado APA. *Ainscough v. Owens*, 90 P.3d 851, 857 (Colo. 2004).

100.     This Court has exercised supplemental jurisdiction over state APA claims under

28 U.S.C. § 1367 where those claims, as here, arise out of the same case or controversy. S*ee*

*Drive Sunshine Inst. v. High Performance Transp. Enter.*, 2014 U.S. Dist. LEXIS 142536, at \*3

(D. Colo. Oct. 7, 2014) (exercising supplemental jurisdiction over APA claims under 28 U.S.C.

§ 1367(a)).

101.     The Secretary's abuse of discretion in denying InfoCision's registration but not

others similarly situated constitutes an unconstitutional prior restraint and infringes InfoCision's

fully protected charitable speech in violation of the United States Constitution, the Colorado

Constitution and the APA. Because Plaintiff's federal and state claims derive from the same

agency action and affect the same legally protected interest, they are so related that they form

part of the same case or controversy warranting supplemental jurisdiction in this case. *Id.*

102.     Federal courts have also retained pendent jurisdiction over remaining state law

claims in the interests of judicial economy, *see Gale v. City & Cty. of Denver*, 2018 U.S. Dist.

LEXIS 92908, at \*21 (D. Colo. June 1, 2018), and necessarily so where the non-federal claims

arise "from a common nucleus of operative fact" such that the parties would ordinarily expect "to

try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (superseded by statute at 28 U.S.C. § 1367(a)).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following relief and judgment from this Court:

a. A stay of enforcement of the unconstitutional statute as applied to InfoCision to ban its prospective fully protected speech in Colorado pending judicial review;

b. A permanent injunction enjoining the enforcement of the provisions granting unbridled discretion to the Secretary of State, her agents, and employees, and establishing an unconstitutional prior restraint on the protected charitable speech of InfoCision, its agents, employees, and others similarly situated;

c. A declaration that the challenged statutory provisions granting unbridled discretion and creating an unconstitutional prior restraint that chills protected speech on their face violate the First and Fourteenth Amendments to the United States Constitution and Article II, § 10 of the Colorado Constitution;

d. A declaration that the challenged statutory provisions as applied to InfoCision violate the First and Fourteenth Amendments to the United States Constitution and Article II, § 10 of the Colorado Constitution;

e. A declaration that the Secretary of State has violated InfoCision's constitutional rights and, as a result, that InfoCision has been damaged;

f. An order requiring that the Secretary of State pay all costs, interest, and attorney's fees as may be incurred with this proceeding for judicial review pursuant to Section 1988 of Title 42 of the Civil Rights Act.

g. An order providing such other and further relief as this Court deems just and

proper and for the purpose of redressing InfoCision's grievances.

DATED this 11th day of February, 2020.

Respectfully submitted,

By  */s/ Karen Donnelly*
Karen Donnelly
Errol Copilevitz
COPILEVITZ, LAM & RANEY, P.C.
310 W. 20th Street, Suite 300
Kansas City, MO 64108
(816) 472-9000
FAX:  (816) 472-5000
kdonnelly@clrkc.com
ec@clrkc.com

Michael W. Gross
LAW OFFICES OF MICHAEL W. GROSS, LLC
3570 East 12th Avenue Denver, CO 80206
(303) 893-2500
FAX: (303) 893-3349
mwgrosslaw@comcast.net

***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 11, 2020, a true and correct copy of the foregoing document was served upon the following via the Court's e-filing system:

Grant T. Sullivan
Assistant Solicitor General
Office of the Colorado Attorney General
State Services Section
Public Officials Unit
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6349
Email: grant.sullivan@coag.gov

***Attorney for Defendant***

*/s/ Karen Donnelly*