IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 20-cv-0357-WJM-KAS

INFOCISION MANAGEMENT CORPORATION,

    Plaintiff,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State,

    Defendant.

---

**ORDER CONCERNING MOOTNESS-BASED JURISDICTIONAL CONCERNS ON LIMITED REMAND FROM THE TENTH CIRCUIT**

---

This case is before the Court on limited remand from the Tenth Circuit Court of Appeals for the limited purpose of addressing the mootness-based jurisdictional concerns identified in the Tenth Circuit's Order of July 5, 2023 and deciding, in the first instance, whether this matter is now moot.  (ECF No. 59.)  For the following reasons, the Court determines that this action is now moot.

## I. BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises from Defendant Jena Griswold's, in her official capacity as Colorado Secretary of State ("Secretary"), 2019 denial of Plaintiff InfoCision Management Corporation's ("InfoCision") application to renew its annual registration to solicit charitable contributions in Colorado.  The Secretary denied the application under the Colorado Charitable Solicitations Act, Colo. Rev. Stat § 6-16-101, *et seq.* (the "Act"), because a Stipulated Final Order for Permanent Injunction and Civil Penalty Judgment ("Stipulated Final Order") (ECF No. 35-3 at 1) enjoined InfoCision

from making false statements to induce customers to make charitable contributions within the preceding five years. *See* Colo. Rev. Stat. § 6-16-104.6(10) ("No person may act as a paid solicitor . . . if such person . . . has been enjoined within the immediately preceding five years under the laws of this or any other state or of the United States from engaging in deceptive conduct relating to charitable solicitations."). On November 9, 2021, the Court concluded that the Act was not an unconstitutional restriction of speech and granted summary judgment in the Secretary's favor, *InfoCision Mgmt. Corp. v. Griswold*, 570 F. Supp. 3d 1051 (D. Colo. 2021). (ECF No. 47.) InfoCision appealed that decision to the Tenth Circuit. (ECF No. 53.)

The Secretary first raised mootness in her answer brief before the Tenth Circuit because the five-year restriction on InfoCision's registration expired during the pendency of the appeal and InfoCision had since reregistered as a professional solicitor in Colorado. (ECF No. 75-1 at 15–18; ECF No. 75-5.) In its reply brief, InfoCision argued that the case was not moot because "collateral consequences" flowed from the Secretary's past denial of its registration. (ECF No. 75-2 at 11–12.) Specifically, it argued that one state, Mississippi, was required to deny its registration based on the Secretary's denial. (*Id*. at 12.)

The Tenth Circuit ordered supplemental briefs on mootness, recognizing that InfoCision is registered as a professional solicitor in Colorado. (ECF No. 75-3 at 3–4.) The panel stated that the parties could "supplement the record as strictly necessary to support their supplemental briefs," and that InfoCision bears the burden to show collateral consequences. (*Id*. at 2, 4.) Following the supplemental briefing,

the Tenth Circuit issued a limited remand order for the Court to address the mootness issue.  (ECF No. 75-4.)

The Court entered a scheduling order allowing limited discovery on the mootness issue.  (ECF No. 67.)  Following the close of discovery, the parties filed opening and response briefs.  (ECF Nos. 75–79.)  The matter is ripe for review.

## II. LAW

As Article III requires an actual case or controversy, a court lacks subject-matter jurisdiction over a case that is moot.  *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (citing *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019)).  "A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Id.* (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks omitted)).  In other words, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."  *Id.* (citation omitted).  The defendant bears the burden of establishing that a "once-live case has become moot."  *Id.* (quoting *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022)).

"The crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world."  *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (quotations and citation omitted).  "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if

3

the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotations and citation omitted). In a moot case, a plaintiff no longer suffers a redressable "actual injury." *Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (quotations omitted).

### III. ANALYSIS

#### A.   Form of Relief Sought

"The court must decide whether a case is moot as to 'each form of relief sought.'" *Prison Legal News*, 944 F.3d at 880 (quoting *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (explaining the plaintiff's "burden to demonstrate standing for each form of relief sought . . . exists at all times throughout the litigation" (quotations omitted))). "The mootness of a plaintiff's claim for injunctive relief is not necessarily dispositive regarding the mootness of his claim for a declaratory judgment." *Id.* (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011)).

"Generally, a claim for prospective injunction becomes moot once the event to be enjoined has come and gone." *Id.* (quoting *Citizen Ctr. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014)); *Jordan*, 654 F.3d at 1025 (injunctive relief claim becomes moot when the "plaintiff's continued susceptibility to injury" is no longer "reasonably certain" or is based on "speculation and conjecture"). A claim for declaratory relief that does not "settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff" is moot, *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) (quotations omitted), because it fails to "seek[ ] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant," *Jordan*, 654 F.3d at 1025.

4

In this action, InfoCision seeks injunctive and declaratory relief.  In its Complaint, among other things, InfoCision requests:

- "A permanent injunction enjoining the enforcement of the provisions granting unbridled discretion to the Secretary of State, her agents, and employees, and establishing an unconstitutional prior restraint on the protected charitable speech of InfoCision, its agents, employees, and others similarly situated" (ECF No. 1 at 21);
- "A declaration that the challenged statutory provisions granting unbridled discretion and creating an unconstitutional prior restraint that chills protected speech on their face violate the First and Fourteenth Amendments to the United States Constitution and Article II, § 10 of the Colorado Constitution"; (*id.*)
- "A declaration that the challenged statutory provisions as applied to InfoCision violate the First and Fourteenth Amendments to the United States Constitution and Article II, § 10 of the Colorado Constitution" (*id.*); and
- "A declaration that the Secretary of State has violated InfoCision's constitutional rights and, as a result, that InfoCision has been damaged" (*id.*).

For the following reasons, the Court finds that "[n]either form of relief would redress an ongoing 'actual injury.'"[1]  *Prison Legal News*, 944 F.3d at 882 (quoting *Ind*, 801

---

[1] To the extent InfoCision's allegations of injury depend on the collateral consequences doctrine, the Court addresses and rejects those contentions below.  *See infra*, Part III.B.1.

5

F.3d at 1213).

    1.    <u>Injunctive Relief</u>[2]

InfoCision's request for injunctive relief is moot.[3]  Because the event to be enjoined—the Secretary's enforcement of the Act—has come and gone, there is now no reason for the Court to order the Secretary to cease enforcement.  *See id.* (citing *Citizen Ctr.*, 770 F.3d at 907 (finding plaintiff's request for injunctive relief moot)).  She has already done so by registering InfoCision as a charitable solicitor in Colorado.  *See Smith*, 44 F.4th at 1249 ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed.") (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)); *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 728 (10th Cir. 1997) ("There is no point in ordering an action that has already taken place.").

InfoCision's contention that past harm constitutes injury-in-fact for purposes of

---

[2] The Secretary argues that InfoCision cannot evade mootness by alleging hypothetical injuries to hypothetical third parties that are not before the Court. (ECF No. 75 at 16.)  InfoCision clarifies that this "is not how [it] establishes jurisdiction here," but then explains that even if it were the basis for its jurisdiction, it could raise First Amendment prior restraint claims on behalf of third parties not before the Court, notwithstanding *Warth v. Seldin*, 422 U.S. 490 (1975).  (ECF No. 79 at 5 (citing cases).)

The Court holds InfoCision to its representation that third party standing is not the basis for its jurisdictional argument.  Nevertheless, to the extent InfoCision requests injunctive relief on behalf of third parties, the Court concludes this is an insufficient basis to defeat mootness.  *See Warth*, 422 U.S. at 499 ("even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *cf. Jordan*, 654 F.3d at 1026 ("That a declaration might guide third parties (*i.e.*, those not parties to the lawsuit) in their future interactions with a plaintiff is insufficient.").

[3] This analysis applies equally to the extent InfoCision contends its injunctive relief request is facial and/or as-applied.

pursuing injunctive relief if it causes continuing, present adverse effects does not change this conclusion. (ECF No. 79 at 6.) "Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance—"[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Jordan*, 654 F.3d at 1024. Below, the Court concludes that InfoCision has not demonstrated that the collateral consequences exception to mootness applies, such that it alters the analysis here.

  2.  <u>Declaratory Relief</u>

When the Tenth Circuit applies the mootness doctrine in the declaratory judgment context, "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Jordan*, 654 F.3d at 1025 (citations omitted).

Here, the Secretary has now registered InfoCision as a charitable solicitor in Colorado. (ECF No. 75 at 2.) Further, the Secretary has confirmed that InfoCision misconstrues the Act in arguing that the Secretary will take further action against its registration by interpreting her own previous ban as triggering an injunction under § 6-16-104.6(10). (ECF No. 78 at 10.) Rather, the Secretary is only required to deny registration if an applicant has been enjoined within the immediately preceding five years from engaging in deceptive conduct relating to charitable solicitations. (*Id.*) "The Act does not state that denial of a paid solicitor's application constitutes an injunction," and the Secretary urges this Court not to read such language into the statute. (*Id.*) The Court interprets the Act in the same manner as the Secretary, and

7

thus, the Court takes the Secretary's representation that it will not re-ban InfoCision at face value.

Accordingly, because a declaration from this Court cannot affect the Secretary's behavior toward InfoCision, the Court concludes that InfoCision's as-applied challenge to the Act and related request for declaratory relief are moot. *See Prison Legal News*, 944 F.3d at 883 ("When a plaintiff brings an as-applied claim, prospective relief must be limited to a future wrong that 'disadvantages [the plaintiffs] in the *same fundamental way*.'") (quoting *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (emphasis in original)); *Jordan v. Pugh*, 2006 WL 1028775, at *3 (D. Colo. Apr. 17, 2006) (an "as applied" challenge to a regulation can become moot if the regulation is no longer applied).

InfoCision attempts to revitalize its moot claims by relying on the fact that at least one of its declaratory requests is a facial challenge to the Act. InfoCision argues that because its facial challenge turns on the unconstitutionality of the statute itself, which is unchanged, its declaratory and injunctive relief requests are not moot. (ECF No. 76 at 6.) However, even a request for declaratory relief requires a redressable injury. *Jordan*, 654 F.3d at 1025. Below, the Court has determined that InfoCision does not meet the collateral consequences exception to mootness.

Further, the Court finds *Denver Bible Church v. Polis*, 2022 WL 200661 (10th Cir. Jan. 24, 2022), a case upon which InfoCision relies, is distinguishable. As an initial matter, this unpublished case is not binding on the Court. Nevertheless, the Court briefly discusses it. As the Secretary points out, "[t]he plaintiffs in *Denver Bible*

8

*Church* argued that the Colorado Disaster Emergency Act ("CDEA") was facially unconstitutional; they 'sought to enjoin the State from enforcing its executive and public-health orders, [and] to require the State to terminate such orders.'" (ECF No. 75 at 17.)   That requested relief was still available because although some parts of the challenged orders had been revoked, the State continued to issue orders related to the COVID-19 pandemic*.  Denver Bible Church*, 2022 WL 200661, at *4.   Therefore, a declaration that the CDEA was unconstitutional would have forced the State to terminate its public-health orders issued under the CDEA, thus changing the State's behavior toward the plaintiffs.  In this case, however, a declaration that the Act is facially unconstitutional simply cannot affect the Secretary's behavior toward InfoCision because she has *already* registered it as a charitable solicitor in Colorado.  Thus, even InfoCision's facial challenge is moot.

In its last declaratory relief request, InfoCision essentially requests that the Court declare that the Secretary wronged it.  However, "in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant."  *Jordan*, 654 F.3d at 1025 (citing *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam) (concluding that appellee's claim for declaratory relief was moot where his "primary claim of a present interest in the controversy is that he will obtain emotional satisfaction from a ruling that his son's death was wrongful"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' [impacted by the litigation] must be more than simply the satisfaction of a declaration that a person was wronged." (quoting *Cox v. Phelps Dodge Corp*., 43 F.3d 1345, 1348 (10th Cir. 1994))).  Because the last request seeks such a

9

retrospective opinion, the Court also finds this portion of InfoCision's case moot.

**B.     Exceptions to Mootness**

InfoCision argues that all of the exceptions to mootness apply in this case. The Court is unpersuaded.

    1.     <u>Collateral Consequences</u>

"Under the collateral consequence doctrine, a case is not moot if there remains a secondary or collateral injury despite the resolution of a plaintiff's primary claim."  *Kansas Jud. Rev. v. Stout*, 562 F.3d 1240, 1248 (10th Cir. 2009) (citing *Sibron v. New York*, 392 U.S. 40, 57 (1968)).  "[M]ootness [remains] if no consequences can be foreseen or if foreseeable possible consequences seem remote."  *Id.* (quoting 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3533.3.1 at 124 (3d ed. 2008)).

        a.     *Mississippi*

InfoCision asserts that Colorado's denials of its registration "continue to have severe collateral consequences for [it]."  (ECF No. 76 at 3.)  For support, InfoCision states that Mississippi has confirmed it will deny InfoCision's registration if Colorado's past denials under the Act are not vacated.  (*Id.* at 12 (citing ECF No. 75-7 at 83).)  It explains that in July 2023, Attorney Nathan Thomas called Tanya Webber, Assistant Secretary of State for the Charities Division in Mississippi, to confirm whether Mississippi would follow its mandatory statute and deny the registration of a paid solicitor if that solicitor disclosed a prior denial of a registration to solicit charitable contributions in another state.  (*Id.* at 13.)  According to InfoCision, Webber confirmed that Mississippi would deny the registration.  (*Id.* at 14.)

10

However, a closer examination of Webber's deposition testimony disproves InfoCision's contentions.  The Secretary points out that Webber only gave certain answers indicating that Mississippi would deny InfoCision's registration because "InfoCision had omitted the critical fact that it is currently registered as a paid solicitor in Colorado."  (ECF No. 78 at 6.)  When provided with this detail, Webber's testimony shows that because InfoCision is registered in Colorado, Mississippi's Charitable Solicitations Act, Miss. Code Ann. § 79-11-509(1)(h), does not require that it deny InfoCision's application.  Webber testified: "[i]f the applicant is—has a registration that is—that is denied, revoked or suspended when they submit their registration to our office, we deny, revoke or suspend the registration.  If that's not the case that it's not denied or revoked or suspended when they submit the registration to our office, we don't deny, revoke or suspend their registration."  (ECF No. 75-7 at 40.)  She further testified:

> Q: If the situation were that an applicant had had its registration denied in Colorado for five years, five years had passed and the applicant's registration was no longer denied, but the registrant was active in Colorado, Colorado had allowed the applicant to reregister in Colorado, the applicant was currently registered in Colorado, and the applicant was not suspended, denied or revoked in any other state or jurisdiction, would Mississippi allow the applicant to register in Mississippi?
>
> . . .
>
> A: Based on that situation, I am assuming, without having any documentation of facts in hand, that Colorado would have issued an order lifting the denial and allowing it to register in Colorado, so, then, yes, Mississippi will allow it to register in its state also.
>
> . . .

11

> Q: So, if that Colorado agency has allowed the applicant to register in Colorado, how would Mississippi proceed?
>
> . . .
>
> A: If it's registered in Colorado, then Mississippi will allow it to register in its state also.

(*Id.* at 103–04.)

Based on this testimony, it is clear that Mississippi examines the applicant's current registration status in other jurisdictions to determine whether Mississippi will allow it to register there. *See Macias v. N.M. Dep't of Labor*, 21 F.3d 366, 369 (10th Cir. 1994) (holding that a federal court should "give deference to a state administrative agency's interpretation and application of a state statute which it is charged with administering"). When presented with the proper context, Webber's testimony shows that the Secretary's past denial of InfoCision's registration does not prevent it from registering now as a paid solicitor in Mississippi.

Finally, InfoCision's argument that Mississippi would deny its registration if this case is dismissed as moot is also without merit. (ECF No. 76 at 13.) As stated above, Mississippi looks to an applicant's current registration status to make its own decision: "[i]f it's registered in Colorado, then Mississippi will allow it to register[.]" (ECF No. 75-7 at 104.) InfoCision is registered in Colorado, and under Webber's interpretation of Mississippi's statute, it will allow InfoCision to register there, too, even if this case is dismissed as moot.

      b.    *Other States*

InfoCision also argues that "Mississippi is far from the only state that may use Colorado's denial against InfoCision" and worries that "the Secretary's denials, if permitted to stand by this case being mooted, could result in future punishment from

other states, *i.e.*, other states denying InfoCision based on Colorado's denials." (ECF No. 76 at 15, 17.)  For instance, it points to Florida as a state that "could also interpret Colorado's ban as an injunction and invoke its mandatory denial provision." (*Id.* at 16 (citing Fla. Stat. Ann. § 496.410(14)).)  InfoCision references e-mails showing that other states are following this case. (*Id.* (citations omitted).)

While it may be true that other states are monitoring this litigation, InfoCision has not presented evidence that another state is considering revoking or denying its registration based on Colorado's previous denial of its registration.  Its assertions are speculative and insufficient to show that collateral consequences create an exception to mootness here.  *See Kan. Jud. Rev.*, 562 F.3d at 1248.

2.  <u>Capable of Repetition Yet Evading Review</u>

An otherwise moot claim is "capable of repetition, yet evading review" if "(1) the duration of the challenged action [is] too short to be fully litigated prior to its cessation or expiration; and (2) there [is] a reasonable expectation that the same complaining party will be subjected to the same action again." *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1229 (10th Cir. 2012).  This doctrine is "narrow," *Jordan*, 654 F.3d at 1034–35, and applies "only in exceptional situations." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016).  The inquiry turns on "whether something inherent exists in the nature or structure of the governmental action that makes it necessarily of short duration." *Wyoming*, 674 F.3d at 1229.  The plaintiff has the burden of showing that this exception applies. *Id*.

The Court concludes that this exception does not apply.  InfoCision contends that "[t]he challenged application of the ban under § 6-16-104.6(10) is too short in duration to be litigated through appeal before it expires, because Colorado applied

13

the statutory ban and issued its final denials with only three years to fully litigate a challenge." (ECF No. 76 at 16.) InfoCision points to the Secretary's decision to withdraw her denial in August 2018 and not enforce the ban through revocation, which it argues only left it three years from the final denial on January 7, 2020 to complete its challenge. (*Id.*)

However, while the Supreme Court has found that a period of 12 months, 18 months, or even 2 years is too short to be fully litigated, *see Turner v. Rogers*, 564 U.S. 431, 440 (2011) (citing cases), InfoCision did not cite a Supreme Court or Tenth Circuit case standing for the proposition that three years evades review. *But see Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010) (a three-year period evades review). Moreover, the statutory solicitation ban is five years, and while the Court acknowledges that this case involved unique facts shortening the period from five to three years, as the Secretary suggests, "there is no reason to expect that any future denial would be subject to the same one-year delay." (ECF No. 78 at 9.) Accordingly, a future plaintiff challenging the relevant statutory provisions would very likely have a full five years to do so. The parties do not dispute that five years is sufficient to obtain review. Therefore, the capable of repetition yet evading review exception does not apply.

3. <u>Voluntary Cessation</u>

"[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). A defendant must meet a "heavy burden," *see id.*, of showing that (1) it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"

14

and (2) "[i]nterim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Equal Employment Opportunity Commn. v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173–74 (10th Cir. 2017) (quotation marks omitted).  One factor in determining whether the challenged action could not be expected to recur is whether the action has been formally withdrawn or whether defendants have issued a "mere informal promise or assurance . . . that the challenged practice will cease." *Wilderness Watch v. Ferebee*, 445 F. Supp. 3d 1313, 1321 (D. Colo. 2020) (citation omitted).

InfoCision contends that the Secretary is capable of enforcing the Act against it again, based on the same federal injunction; it argues that there is "nothing stopping either the Secretary or her successor from enforcing the injunction-based ban against InfoCision in the future on the basis that the injunction is permanent and thus InfoCision 'has been enjoined within the immediately preceding five years' within the plain language of the statute."  (ECF No. 76 at 20.)

Further, InfoCision asserts that even though it is currently registered under the Act, and the Secretary has stated that the 2018 injunction will not bar InfoCision from registering as a paid solicitor in Colorado, the Secretary could interpret her own previous decision to ban InfoCision as triggering an injunction under the Act and denying its future registration.  (*Id.*)  According to InfoCision, every year it must register with Colorado "presents a new opportunity for the Secretary to wantonly interpret and apply the Act against [it]."  (*Id.* at 21.)

Finally, InfoCision emphasizes that the Secretary cannot make this case moot by voluntarily ceasing the challenged conduct.  "With the political winds of the

15

Secretary of State's Office shifting from term to term, enforcement decisions shift, too." (ECF No. 76 at 21.) InfoCision underscores that "[f]ears of threats, harassment, and even political targeting by government for advocacy on issues of social, economic, religious, and political importance follow, and such risks are especially worrisome for controversial causes unpopular at the time." (*Id.*)

Although it is a "heavy burden" for a defendant to demonstrate that the voluntary cessation exception does not apply, the Court finds that the Secretary has nevertheless done so here. The Secretary responds that InfoCision's argument misconstrues the Act, and if the Secretary interpreted the Act as InfoCision predicts, "it would frustrate the will of the legislature by turning what is supposed to be a temporary five-year denial into an indefinite denial." (ECF No. 78 at 9.) Chris Cash, who recently retired as the Charities Program Manager with the Colorado Secretary of State's Office after being in the role for 22 years, confirmed that "[t]he Secretary of State's Office does not, and never has, administered section 6-16-104.6(10) in this manner." (ECF No. 75-13 at 2.) Rather, "Colorado looks to the date of the injunction's issuance to determine the start and end date of the five-year suspension window required by the statute." (*Id.*)

With respect to InfoCision's argument that the Secretary will interpret her previous ban as triggering an injunction under § 6-16-104.6(10), the Secretary reiterates that InfoCision misconstrues the Act. (ECF No. 78 at 10.) The Secretary is only required to deny an applicant's registration if it has been enjoined within the immediately preceding five years from engaging in deceptive conduct relating to charitable solicitations. C.R.S. § 6-16-104.6(10). The Act does not state that denial

of a paid solicitor's application constitutes an injunction, and Cash confirmed as much, stating that "[i]f the Secretary of State's Office had adopted InfoCision's strained interpretation (which it hasn't), it would not have approved InfoCision's most recent 2023 application for registration and InfoCision would not currently be doing business in Colorado. InfoCision's current registration and ongoing operations in Colorado disprove its own argument." (ECF No. 75-13 at 3.)

Finally, the Secretary explains that she has not simply volunteered to end her alleged unlawful conduct. (ECF No. 78 at 11.) Were that the case, the Secretary would have allowed InfoCision to register when it filed the lawsuit in 2020. Instead, the Secretary only allowed InfoCision to register after the statutory ban expired while this case was on appeal. (*Id.*) Now that the five-year period has expired, the Secretary explains that she "has no statutory authority to deny InfoCision's registration based on the 2018 federal injunction or its own past denial." (*Id.*) And any contention that a future Secretary might misinterpret the Act is speculative and cannot defeat mootness. (*Id.* (citing *Kan. Jud. Rev.*, 562 F.3d at 1248).)

Under these circumstances, the Court finds that the Secretary has met her burden to show that the voluntary cessation exception to the mootness doctrine does not apply here.

**C.    Vacatur of Underlying Orders**

The parties raised the issue of whether the undersigned's Order on summary judgment (ECF No. 47) and the Secretary's denial of InfoCision's registration should be vacated upon a finding that this case is moot before the appellate panel. (ECF No. 75 at 19–20 ("Even if the *Tenth Circuit* vacates this Court's judgment . . ." (emphasis added)); ECF No. 76 at 21; ECF No. 79 at 11 (stating "*federal courts of*

*appeal* can, and do, vacate state court decisions") (emphasis added).)  Accordingly, the parties also briefed this issue on remand for the undersigned.  However, it appears as though vacatur of these orders is the purview of the Tenth Circuit, not this Court.  *See Kansas Jud. Rev.*, 562 F.3d at 1248 ("When a case becomes moot on appeal, the ordinary course is to vacate the judgment below and remand with directions to dismiss.").  Therefore, the Court defers to the Tenth Circuit concerning whether the underlying orders should be vacated.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS:

1. Having complied with the Tenth Circuit's directive that this Court develop the record to the extent necessary to address the mootness-based jurisdictional concerns, the Court determines and concludes that this matter is now MOOT; and

2. The parties are DIRECTED to forthwith notify the Tenth Circuit that this Court has concluded the proceedings on limited remand.

Dated this 14th day of May, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge